UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

LAUREN L. HUTSON,

    Plaintiff,

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

    Defendant.

_____

Case No. 16-1252

HON. _____
United States District Judge

# **COMPLAINT**

Now comes Plaintiff Lauren Hutson, by and through counsel, and for her Complaint against Defendant Reliance Standard Life Insurance Company, alleges as follows:

## Nature of Action

1. This is an action brought pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), to recover accidental death benefits owed under the terms of a group insurance policy issued by Reliance Standard Life Insurance Company.

## Parties

2. Plaintiff Lauren Hutson (hereinafter "Ms. Hutson") is a resident of Berrien County, Michigan.

3. Defendant Reliance Standard Life Insurance Company (Hereinafter "Reliance Standard") is an Illinois insurance company that regularly does business throughout Michigan, including Berrien County.

## Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 § U.S.C. § 1331.

5. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## Count I: Claim for Accidental Death Insurance Benefits
## Pursuant to 29 U.S.C. § 1132(a)(1)(B)

6. ERISA authorizes beneficiaries such as Ms. Hutson to enforce their rights to benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

7. At all material times, Robert Krugman (hereinafter "Mr. Krugman") had accidental death benefit coverage under a group insurance policy issued by Reliance Standard to Mr. Krugman's employer, IDEX Corporation.

8. Reliance Standard is a fiduciary under ERISA and has a duty to administer its accidental death policy solely in the interest of its insureds and their beneficiaries. 29 U.S.C. § 1104(a)(1).

9. Mr. Krugman elected accidental death coverage in the principal sum of $300,000 under the Reliance Standard policy.

10. Mr. Krugman designated his mother, Helen Krugman, as his primary beneficiary for the accidental death coverage under the Reliance Standard policy.

11. Mr. Krugman designated his sister, Ms. Hutson, as his secondary beneficiary for the accidental death coverage under the Reliance Standard policy.

12. The Reliance Standard policy provides that: "If, due to Injury, an Insured suffers … Loss of Life," Reliance Standard will pay the benefits in the amount of the principal sum elected by the insured.

3

13. Mr. Krugman and his mother, Helen Krugman, both died due to injuries suffered in a motor vehicle accident on August 28, 2014.

14. As the sole remaining beneficiary, Ms. Hutson submitted a timely claim for benefits to Reliance Standard.

15. In the course of reviewing Ms. Hutson's claim, Reliance Standard received documents including the medical examiner's report, the autopsy report, and the State of Michigan Traffic Crash Report.

16. The medical examiner's report prepared by Dr. Frederick Johansen established Mr. Krugman's cause of death as "Multiple Blunt Force Injuries" and "Motor Vehicle Accident."

17. The autopsy report prepared by Dr. Stephen Cohle established Mr. Krugman's cause of death more specifically as "Traumatic rupture of abdominal aortic aneurysm."

18. The autopsy report further established the manner of death as "Accident."

19. The State of Michigan Traffic Crash Report was prepared by the Michigan State Police, and it identifies the time of the crash as 10:28 a.m. on Thursday, August 28, 2014.

20. The police report indicates that the head-on crash occurred on Red Arrow Highway in Hartford Township, Van Buren County.

21. Mr. Krugman was driving an Orange Honda Fit, and his mother, Helen Krugman was a passenger.

22. The other vehicle involved in the crash was a Red Ford Escape driven by Peter Sinclair.

23. The police report identifies the point of crash as the westbound lane of Red Arrow Highway.

24. Mr. Krugman's Orange Honda Fit was found on the double yellow line toward the center of the road.

25. Mr. Sinclair's Red Ford Escape was found on the westbound shoulder.

26. The police found eight empty bottles of Mike's Hard Lemonade in Mr. Sinclair's Red Ford Escape.

27. As reported in the police report provided to Reliance Standard, an eyewitness, Ms. Takela Broyles, told police that she saw the events leading up to the crash from her kitchen window.

28. Ms. Broyles told police that "the orange vehicle was eastbound and the red vehicle was westbound on Red Arrow Hwy when she saw the red vehicle cross the center line into the lane of the orange vehicle."

29. Ms. Broyles told police that "it appeared the driver of the red vehicle had lost control."

30. Ms. Broyles told police that she heard a horn before the crash, and "the driver of the orange vehicle was on the horn and appeared to try to get the attention of the red vehicle that drove over the center line."

31. Although Ms. Broyles described Mr. Sinclair's Red Ford Escape driving westbound in the eastbound lane toward Mr. Krugman's Orange Honda Fit, her view of the point of collision apparently was obscured by a tree, and the police report identifies the point of collision in the westbound lane with Mr. Krugman's Orange Honda Fit found on the center line.

32. A police crash analysis concluded that Mr. Krugman's Orange Honda Fit swerved momentarily before the crash with "an abrupt lane entry" into the westbound lane, possibly in an effort to avoid crashing with Mr. Sinclair's Red Honda Escape traveling in the wrong lane.

33. Both vehicles were apparently veering toward the westbound shoulder of Red Arrow Highway when the collision occurred, suggesting that Mr. Sinclair may have tried to steer his Red Ford Escape back into the westbound lane at the same time that Mr. Krugman's Orange Honda Fit swerved sharply into the westbound lane in an unsuccessful effort to avoid the collision.

34. The police crash analysis notes that data obtained from the Red Ford Escape shows Mr. Sinclair activated his brakes approximately 0.5 seconds before the crash while steering back toward the westbound shoulder, and Mr. Sinclair's Red Ford Escape slowed from 46 mph to 32 mph in the process.

35. The precise speed of Mr. Krugman's Orange Honda Fit at the time of the crash is unknown because the crash data in that vehicle was not supported in the system used by the Michigan State Police, and the police crash analysis estimates the speed of Mr. Krugman's Orange Honda Fit to be 42 mph at the time of impact.

36. The speed limit on this section of Red Arrow Highway is 55 mph, and neither vehicle appeared to be speeding.

37. The crash totaled both vehicles and caused the airbags in both vehicles to deploy.

38. Both Mr. Krugman and his mother were restrained by seatbelts at the time of the crash.

39. Helen Krugman was pronounced dead at the scene of the crash.

40. Mr. Krugman was transported to Lakeland Hospital in St. Joseph where he was pronounced dead on arrival.

41. The autopsy showed that Mr. Krugman suffered massive blunt force injuries to his chest and abdomen, including a broken sternum, broken ribs, and a "traumatic rupture of abdominal aortic aneurysm" in the vicinity of a "patterned abrasion consistent with a seatbelt."

42. A Reliance Standard nurse reviewer noted on February 10, 2015 that: "It would appear that the injuries sustained were as a result of the head on collision, specifically the rupture of the abdominal aortic aneurysm resulted in his death."

43. Thus, it is clear that Mr. Krugman lost his life due to injury, thereby triggering entitlement to benefits for his beneficiary under the terms of the Reliance Standard policy.

44. However, the Reliance Standard nurse reviewer later provided an addendum to this conclusion stating: "It would appear had claimant not sustained the abdominal aortic aneurysm, he could have survived the accident based upon the abrasions, and contusions of the trunk and extremities along with the multiple sternum, wrist and rib fractures."

45. Consequently, on April 1, 2015, Reliance Standard denied Ms. Hutson's claim on the basis of an exclusion contained in the Reliance Standard policy that states: "The Policy does not cover any loss … to which sickness, disease, or myocardial infarction, including medical treatment thereof, is a contributing factor."

46. The Reliance Standard denial letter specifically relied on the presence of an abdominal aortic aneurysm as the basis for invoking this exclusion, stating:

> While we acknowledge that the death certificate and Autopsy Report listed that the manner of death was "Accident," the documentation presented in our file and obtained during the course of our investigation confirms that sickness and diseases contributed to Robert Kevin Krugman's death. The Autopsy Report confirms that Mr. Krugman had an abdominal aortic aneurysm (with Arteriosclerotic cardiovascular disease and Hypertensive cardiovascular disease with left ventricular hypertrophy and Arteriolonephroscerosis), which are sickness and disease conditions, and these conditions contributed to Mr. Krugman's loss. The facts support that Robert Kevin Krugman's death did not result directly from accidental means, but was contributed to by the above-referenced sickness/disease conditions. Policy VAR 205667 does not cover any loss to which sickness, disease, or myocardial infarction is a contributing factor (see Exclusion 1). Therefore, this loss is not covered under Policy VAR 205667.

47. Ms. Hutson appealed the benefit denial to Reliance Standard, providing among other things this opinion of preeminent forensic pathologist, Dr. Bader J. Cassin:

Medical examiner autopsies of Helen and Robert Krugman were arranged for the following morning in Grand Rapids. Seated in the front seat of the Honda and properly restrained at the time of the frontal impact with the Ford, both bodies reflected similar injuries and their consequences. Rib fractures and associated injuries were in characteristic seat belt locations and deep abdominal soft tissue trauma was found at the level of the lap belt, i.e., lower aortic laceration with rapid localized hemorrhage. There is no indication of any prior abnormality in Helen's lower aorta. The autopsy notes for Robert describe a 3.82 cm aneurysm at the level of the laceration. The position and discreet size of aortic laceration are characteristic of this type of impact and injury mechanism and provide a parallel example of similar injuries and consequences. That a small aneurysm was present at this location in Robert's aorta is coincidental and would have presented no independent increased danger of sustaining this injury. The parallel nature of the injuries demonstrates this, and it is in this reviewer's experience that virtually identical injuries in both belted children and adults have been associated with just such impact forces.

Additional findings at both autopsies were the presence of chronic diseases and their consequences, none of which were apparently operative in the production of any injury.

As a consequence of this review, I am confident that Robert Krugman's death resulted "directly and independently from injury, with no other contributing cause." Moreover, "sickness, disease or myocardial infarction" were not "contributing factors" in Mr. Krugman's death.

48. Ms. Hutson also provided Reliance Standard with a report entitled "Guidelines for the treatment of abdominal aortic aneurysms," issued by the Joint Council of the American Association for Vascular Surgery and Society for Vascular Surgery, confirming that an abdominal aortic aneurysm of the small size found in Mr. Krugman presents only a negligible risk of rupture if any risk at all, including an analysis that found the risk to be 0.0% with 95% confidence.

49. Nevertheless, Reliance Standard denied Ms. Hutson's appeal on August 21, 2015.

50. In doing so, Reliance Standard actually admitted that its original rationale for denying the claim was wrong, and Reliance Standard came up with a new rationale for denying the appeal.

51. Reliance Standard arranged for a file review by Dr. Evan Matshes, and the August 21, 2015 appeal denial relies on Dr. Matshes opinion:

> The cause of death is blunt trauma. The manner of death is accident. However, there is compelling evidence to suggest that Mr. Krugman was incapacitated or dying from an acute/subacute myocardial infarction, and that this myocardial infarction was the reason that he drifted out of his lane, colliding with the oncoming car.
>
> Mr. Krugman had incontrovertible evidence of severe injuries that were incompatible with life. Furthermore, there is anatomic evidence that indicates that he was alive at the time of the collision (the large hemoperitoneum detected at autopsy). There is no scientific basis to indicate whether or not the

11

abdominal aortic aneurysm put Mr. Krugman at increased risk of abdominal laceration – the forces involved in this collision were profound, as evidenced by bilateral fractures of the first ribs (there is abundant scientific literature that indicates that first rib fractures in adults only result from severe forces, and portend very poor outcomes in affected patients).

Furthermore, the autopsy report indicates that the aneurysm was "38 cm" in diameter. This must be an error. I suspect that it was, in fact, 3.8 cm in diameter. This is considered to be a very small aneurysm. In fact, it is so small that it is only about half the size considered for surgical repair, and carries with it less than 1% risk per year of spontaneous rupture. Therefore, I find it very highly unlikely that the aneurysm played any role whatsoever increasing Mr. Krugman's risk of dying following severe blunt trauma in a motor vehicle accident. Injuries like his are not uncommon in belted automobile crashes; a fact further supported by the reality that his mother has the same aortic laceration in the absence of an aneurysm.

The most startling and interesting aspect of this case is the acute and evolving left ventricle myocardial infarction that is present in the context of severe coronary artery artherosclerosis (90% narrowing of the left anterior descending coronary artery) and moderate to severe enlargement of the heart due to long-standing hypertension (hypertensive cardiovascular disease). Any of these three conditions, but especially the acute and evolving myocardial infarction, would explain the apparent sudden incapacitation of Mr. Krugman which likely caused him to drift his car into the oncoming lane, striking a car with no apparent attempt to brake or avoid the vehicle.

Based on the available history, the preponderance of medical evidence indicates that Mr. Krugman died of accidental blunt trauma. Furthermore, more likely than not, Mr. Krugman became disoriented or incapacitated because of acute and evolving myocardial infarction. This myocardial infarction, in the context of an already very ill heart, was the dominant pathophysiological risk factor for his collision (especially in the context of negative toxicology testing).

52. In short, there is no doubt that Mr. Krugman died as a result of accidental blunt force injuries suffered in the August 28, 2014 car crash.

53. The new basis for denial raised in the August 21, 2015 letter is Dr. Matshes' speculation that one of three heart conditions may "explain the apparent sudden incapacitation of Mr. Krugman which likely caused him to drift his car into the oncoming lane, striking a car with no attempt to brake or avoid the vehicle."

54. But Dr. Matshes' hypothesis is inconsistent with the facts of the accident, including but not limited to:

    a. An eyewitness describes Mr. Sinclair's Red Ford Escape as the vehicle that was out of control, not Mr. Krugman's Orange Honda Fit.

    b. Mr. Sinclair's Red Ford Escape was the vehicle that originally began traveling in the wrong lane, heading directly toward Mr. Krugman's Orange Honda Fit.

    c. The eyewitness reported that Mr. Krugman "was on the horn and appeared to try to get the attention of the red vehicle that drove over the center line."

    d. The police crash analysis concluded that Mr. Krugman's Orange Honda Fit made an "abrupt lane entry" into the westbound lane, consistent with an effort to avoid crashing with Mr. Sinclair's Red Honda Escape as it approached in the wrong lane, and there is no evidence that Mr. Krugman "drifted" into the oncoming lane.

55. These facts indicated that Mr. Krugman was not incapacitated in the moments before the crash, actively honking his horn, and it appears that he took deliberate evasive action, thus rendering Dr. Matshes' hypothesis implausible.

56. Reliance Standard did not give Ms. Hutson an opportunity to address the problems in Dr. Matshes' novel theory during the course of her appeal, and because the August 21, 2015 decision amounted to a new denial, Ms. Hutson requested an additional opportunity to appeal the decision.

57. Reliance Standard refused Ms. Hutson's request for an additional appeal, however, and Reliance Standard failed to provide Ms. Hutson with a full and fair review of her claim as a result.

58. Ms. Hutson has exhausted all administrative remedies made available to her by Reliance Standard.

59. The terms of the Reliance Standard insurance contract make it clear that Ms. Hutson is entitled to benefits because Mr. Krugman suffered loss of his life due to an "accidental bodily injury to an Insured which is caused directly by accidental means and which occurs while the Insured's coverage under this Policy is in force."

60. Reliance Standard has the burden of proof regarding its policy exclusion, and given the facts of the accident, it is clear that Reliance Standard cannot carry that burden.

61. Particularly given that Reliance Standard admits that Mr. Krugman died as a result of blunt force injuries suffered in an accident, and Reliance Standard did not attempt to check Dr. Matshes' new theory against the actual facts of the accident, the denial of benefits in this case is meritless.

62. Therefore, it would be appropriate for the Court to award Ms. Hutson the benefits to which she is entitled under the terms of the Reliance Standard policy and ERISA, 29 U.S.C. § 1132(a)(1)(B).

63. It would also be appropriate for the Court to award Ms. Hutson her costs and reasonable attorney fees incurred in this action pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

## **Request for Relief**

Wherefore, pursuant to 29 U.S.C. § 1132, Plaintiff Lauren Hutson requests this Honorable Court to enter judgment in her favor against Defendant Reliance Standard Life Insurance Company for the full amount of accidental death insurance benefits owed, together with appropriate costs, interest, and statutory attorney fees.

                                        Respectfully submitted,

                                        <u>s/Robert B. June</u>
                                        Robert B. June
                                        Law Offices of Robert June, P.C.
                                        Attorney for Plaintiff
                                        415 Detroit Street, 2nd Floor
                                        Ann Arbor, MI 48104-1117
                                        Phone: (734) 481-1000
                                        Primary E-Mail: bobjune@junelaw.com
                                        Attorney Bar Number: P51149

Dated:  October 21, 2016