UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAUREN L. HUTSON,

    Plaintiff,

v.                                             Case No. 1:16-CV-1252

RELIANCE STANDARD LIFE                HON. GORDON J. QUIST
INSURANCE COMPANY,

    Defendant.
_____/

## **OPINION**

Plaintiff, Lauren L. Hutson, seeks accidental death benefits under a group accident policy issued by Defendant, Reliance Standard Life Insurance Company. After Reliance denied Hutson's claim based on a policy exclusion for any loss "to which sickness, disease, or myocardial infarction, including medical or surgical treatment thereof, is a contributing factor," Hutson sued Reliance under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, seeking review of Reliance's decision.

The parties have filed cross-motions for judgment on the administrative record. *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). For the following reasons, the Court will grant Reliance's motion, deny Hutson's motion, and affirm Reliance's decision denying benefits.

### **I. STANDARD OF REVIEW**

The parties agree that the Court must review Reliance's denial of benefits de novo. (ECF No. 7 at PageID.372–73; ECF No. 8 at PageID.398.) The de novo standard applies to a plan administrator's factual and legal determinations. *Rowan v. Unum Life Ins. Co. of Am.*, 119 F.3d 433,

435 (6th Cir. 1997). "In the ERISA context, the role of the reviewing federal court is to determine whether the administrator or fiduciary made a correct decision, applying a *de novo* standard." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir.1990). "This review is limited to the administrative record and the court is obligated to determine whether the administrator properly interpreted the plan and if the insured was entitled to benefits under the plan." *Kaye v. Unum Group/Provident Life & Accident*, No. 09–14873, 2012 WL 124845, at *5 (E.D. Mich. Jan.17, 2012) (citing *Perry*, 900 F.2d at 967). "The administrator's decision is accorded no deference or presumption of correctness." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002) (citing *Perry*, 900 F.2d at 966). "When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins*, 150 F.3d at 616 (citations omitted).

## II. BACKGROUND

**A.   The Decedent and the Policy**

As of August 28, 2014, Robert Krugman was employed by Gast Manufacturing, a subsidiary of IDEX Corporation, and was eligible for coverage under Reliance group accidental death and dismemberment policy VAR 205667 (Policy) issued to IDEX. (ECF No. 6-4 at PageID.138.) The Policy excludes coverage for losses arising under various circumstances, including "any loss . . . to which sickness, disease, or myocardial infarction, including medical or surgical treatment thereof, is a contributing factor." (ECF No. 6 at PageID.67.) The Policy is an "employee welfare benefit plan" within the meaning of § 3(1) of ERISA, 29 U.S.C. § 1002(1). Krugman elected coverage under the Policy and named his mother, Helen Krugman, his primary beneficiary and his sister, Lauren Hutson, his secondary beneficiary. (ECF No. 6-4 at pageID.107.)

**B.     The Accident**

On August 28, 2014, at approximately 10:28 a.m., Krugman and his mother were traveling eastbound on Red Arrow Highway in Hartford Township, Michigan, in Krugman's orange Honda Fit when they collided head-on with a vehicle traveling in the westbound lane. (ECF No. 6-4 at PageID.152–53.)  Peter Sinclair was driving the westbound vehicle, a red Ford Escape. (*Id.* at PageID.155, 157.)  At the time of the accident, the weather was partly cloudy and the pavement was dry. (*Id.* at PageID.154.)

Both vehicles came to rest in the westbound half of the road, generally facing west. Krugman's orange Honda Fit was within the lane toward the center of the road with its left rear tire slightly over the double yellow line, and Sinclair's red Ford Escape was situated several feet to the east of the orange Honda Fit on the shoulder, entirely north of the fog line. (*Id.* at PageID.154–55; ECF No. 6-5 at PageID.202.)  Krugman's mother was pronounced dead at the scene.  Krugman was found unconscious, "but breathing," and was transported to Lakeland Hospital, where he died a short time later.  Sinclair was also taken to Lakeland Hospital, where he was treated and later released. (ECF No. 6-4 at PageID.135, 155, 157.)

It is undisputed that one of the two vehicles crossed the center line into the opposite lane of travel, and there was no evidence that either driver was impaired. (*Id.* at PageID.121, 169.)  Hutson argues that Sinclair's red Escape crossed the center line into Krugman's lane.  She relies primarily upon a witness statement from Takela Broyles, who lived on the south side of Red Arrow Highway. The morning of the accident, Broyles told Michigan State Police Trooper Nathan McClain that she saw the accident from her kitchen window.  Broyles "stated that the orange vehicle was eastbound and the red vehicle was westbound on Red Arrow H[ighway] when she saw the red vehicle cross the center line into the lane of the orange vehicle.  She said it appeared the driver of the red vehicle

3

lost control." (*Id.* at PageID.156.) Broyles observed the accident from a distance of approximately 70–80 feet. (*Id.* at PageID.157.) Hutson also notes that Trooper McClain spoke with another witness, Cynthia Roethel, who did not see the accident but said she heard a horn followed by a crash. (*Id.*) Trooper McClain returned to Broyles after speaking with Roethel and asked Broyles if she heard a horn. Broyles said that the driver of the orange vehicle blew his horn apparently to get the attention of the red vehicle that crossed the center line. (*Id.* at PageID.156.) Hutson finally notes that, while in the back of the ambulance, Sinclair said that he did not blow his horn. (*Id.* at PageID.158.) Thus, Hutson argues, Broyles's statement and Sinclair's denial that he blew his horn show that Sinclair's red Escape was the vehicle that crossed the center line. (ECF No. 8 at PageID.388–89.)

Hutson's version is implausible. The overwhelming weight of the evidence shows that Krugman's vehicle crossed the center line:

- Trooper McClain also spoke with Sinclair at the scene. Sinclair said that as he was traveling westbound, "the eastbound orange vehicle drove left of center into his lane." Sinclair also said that "he moved over to the right shoulder before being struck." (*Id.* at PageID.158.) Notwithstanding Broyles's statement, Trooper McClain wrote in his narrative that Krugman's vehicle (Vehicle#1) "appeared to have driven left of the centerline, crashing into WB Vehicle#2 [Sinclair's vehicle]". (*Id.* at PageID.153.)

- Trooper Janes also responded to the scene to assist in the investigation. (*Id.* at PageID.166.) Trooper Janes also interviewed Broyles and asked her to show him the spot from where she observed the crash. Trooper Janes noted that, "[l]ooking out her window a large tree obstructed her view of the crash site." (*Id.* at PageID. 169.) Broyles told Trooper Janes that she saw the red Escape heading westbound and that it appeared to lose control, but she did not see the orange vehicle or the crash. (*Id.*) Broyles agreed that she might have actually observed the red Escape going off the road to avoid a collision with the other car. (*Id.*) Trooper Janes concluded that the "crash occurred when an e/b Honda crossed the centerline for an unknown reason and stuck (sic) a ford (sic) escape nearly headon (sic). The at fault driver is deceased." (*Id.*)

- On September 24, 2014, in furtherance of the investigation, Trooper Janes interviewed Sinclair. Sinclair said that he saw the orange vehicle beginning to drift

4

over into his lane and he tried to leave the roadway to avoid the collision by squeezing between the orange vehicle and a tree on the north side of the road. Sinclair could not remember whether he used his horn, but he thought that he applied his brakes. (ECF No. 6-5 at PageID.172.)

- Sgt. James P. Campbell of the Michigan State Police performed an accident reconstruction, including an animation, which Sgt. Campbell summarized as follows:

    Based on the speed calculation, the scene mapping data and the vehicle damage profile an animation was completed showing the Honda Fit crossing the center line into the path of the Ford Escape. The Escape is veering slightly to the north and braking to avoid the impact. The exact area where the Honda crossed the center line is unknown but it was noted that the Ford Driver did not attempt any steering input until 1.1 seconds prior to impact (-1.1) and did not active (sic) his brakes until 0.5 seconds before impact (-0.5) thus indicating an abrupt lane entry by the Honda Fit. (ECF No. 6-4 at PageID.164.)

    Sgt. Campbell concluded that, "for an unknown reason [the Honda Fit] crossed the centerline of Red Arrow Highway from the eastbound lane into the westbound lane." (*Id.* at PageID.165.)

Thus, the only reasonable conclusion is that Krugman's vehicle crossed the centerline "for an unknown reason."[1]

**C.     Post-Mortem Investigation**

Dr. Fred Johansen, M.D., issued a Medical Examiner's Report and a Certificate of Death on September 4, 2014. In both documents, Dr. Johansen determined the cause of death as "[m]ultiple blunt force injuries" resulting from a motor vehicle accident and that the manner of death as an "[a]ccident." (*Id.* at PageID.135; ECF No. 6-5 at PageID.212–13.)

An autopsy was conducted by Dr. Stephen D. Cohle, M.D. In his report, Dr. Cohle indicated the cause of death as "[t]raumatic rupture of abdominal aortic aneurysm" and the manner of death

---

[1]Hutson argues that the fact that Krugman's right boot had a pattern of the accelerator pedal imprinted on its sole, (*id.* at PageID.159; ECF No. 6-5 at PageID.215), shows that Krugman was not incapacitated, but instead was making a desperate attempt to evade Sinclair's vehicle as it veered into Krugman's lane. (ECF No. 8 at PageID.397.) At best, counsel's argument is speculation, because it is at least as likely that Krugman would have used his *brake* to evade Sinclair's vehicle had it crossed into Krugman's lane. In fact, the evidence shows that Sinclair used his brake to avoid Krugman's vehicle as it veered into Sinclair's lane.

as an "[a]ccident." (*Id.* at PageID.214.) Under "Final Diagnosis(es)," the autopsy report includes, among other findings: (1) arteriosclerotic cardiovascular disease with "90% narrowing of right coronary artery," "[a]bdominal aortic aneurysm," and "[a]cute and subacute infarct of the lateral wall of the left ventricle"; and (2) hypertensive cardiovascular disease with "[l]eft ventricular hypertrophy (590 gram heart)" and "[a]rteriolonephrosclerosis." (*Id.*)

**D.     Hutson's Claim for Benefits**

Hutson, Krugman's surviving beneficiary, made a claim for benefits to Reliance on September 5, 2014. (ECF No. 6-4 at PageID.138–39.) Reliance denied the claim on April 1, 2015, citing the exclusion for loss "to which sickness, disease, or myocardial infarction . . . is a contributing factor." (*Id.* at PageID.112.) In particular, citing the autopsy report, Reliance concluded that Krugman's "abdominal aortic aneurysm (with Arteriosclerotic and cardiovascular disease Hypertensive cardiovascular disease with left ventricular hypertrophy and Arteriolonephroscerosis) . . . [were] sickness and disease conditions, and these conditions contributed to Mr. Krugman's loss." (*Id.*)

Hutson appealed Reliance's denial and supported her appeal with a report from Dr. Bader Cassin, a forensic pathologist, who reviewed the documentation pertaining to Reliance's claim denial. Dr. Cassin concluded that the abdominal aortic aneurysm did not contribute to Krugman's death:

> The autopsy notes for Robert describe a 3.82 cm aneurysm at the level of laceration. The position and discrete size of aortic laceration are characteristic of this type of impact and injury mechanism and provide a parallel example of similar injuries and consequences. That a small aneurysm was present at this location in Robert's aorta is coincidental and would have presented no independent increased danger of sustaining this injury. The parallel nature of the injuries [of Robert and his mother] demonstrates this, and it is in this reviewer's experience that virtually identical injuries in both belted children and adults have been associated with such impact forces.

6

> Additional findings at both autopsies were the presence of chronic diseases and their consequences, none of which were apparently operative in the production of any injury.
>
> As a consequence of this review, I am confident that Robert Krugman's death resulted "directly and independently from injury, with no other contributing cause." Moreover, "sickness, disease or myocardial infarction" were not "contributing factors" in Mr. Krugman's death.

(ECF No. 6-6 at PageID.283.)

As part of its review of the appeal, Reliance referred the matter to MES, a vendor, to arrange a records review by a forensic pathologist. The referral quoted the Policy exclusion and instructed, "[g]iven medical records provided and the above referenced exclusion, please confirm if the cause of death was a result of a sickness, disease or myocardial infarction." (ECF No. 6-7 at PageID.351.) MES assigned the matter to Dr. Evan Matshes, M.D., a Board Certified anatomic pathologist with a sub specialty in forensic pathology and additional expertise in forensic neuropathology and cardiovascular pathology. (*Id.* at PageID.358.) Regarding the aortic aneurysm, Dr. Matshes agreed with Dr. Cassin that it was insignificant as a potential contributing factor:

> [T]he autopsy report indicates that the aortic aneurysm was "38 cm" in diameter. This must be an error. I suspect that it was, in fact, 3.8 cm in diameter. This is considered to be a very small aneurysm. In fact, it is so small that it is only about half the size considered for surgical repair, and carries with it less than 1% risk per year of spontaneous rupture. Therefore, I find it very highly unlikely that the aneurysm played any role whatsoever in increasing Mr. Krugman's risk of dying following severe blunt trauma in a motor vehicle accident. Injuries like his are not uncommon in belted automobile crashes; a fact further supported by the reality that his mother had the same aortic laceration in the absence of an aneurysm.

(*Id.* at PageID.357.) However, Dr. Matshes added:

> The most startling and interesting aspect of this case is the acute and evolving left ventricle myocardial infarction that is present in the context of severe coronary artery atherosclerosis (90% narrowing of the left anterior descending coronary artery) and moderate to severe enlargement of the heart due to long-standing hypertension (hypertensive cardiovascular disease). Any of these three conditions, but especially the acute and evolving myocardial infarction, would explain the apparent sudden incapacitation of Mr. Krugman which likely caused him to drift his car into the oncoming lane, striking a car with no apparent attempt to brake or avoid the vehicle.

> Based on the available history, the preponderance of medical evidence indicates that Mr. Krugman died of accidental blunt trauma. Furthermore, more likely than not, Mr. Krugman became disoriented or incapacitated because of acute and evolving myocardial infarction. This myocardial infarction, in the context of an already very ill heart, was the dominant pathophysiologic risk factor for his collision (especially in the context of negative toxicology testing).

(*Id.*)

On August 21, 2015, Reliance issued a letter upholding the denial of Hutson's claim. Reliance cited Dr. Matshes's opinion, in addition to other evidence in the record, and "concluded that a myocardial infarction contributed to the motor vehicle accident ultimately resulting in Mr. Krugman's unfortunate death." (ECF No. 6-4 at PageID.119–21.)

### III. DISCUSSION

In an ERISA action, the insurer has the burden of proving exclusions from coverage. *Caffey v. Unum Life Ins. Co. of Am.*, No. 95-6373, 1997 WL 49128, at *3 (6th Cir. Feb. 3, 1997). The exclusion at issue here applies if "sickness, disease, or myocardial infarction" contributed to the loss.

As explained above, the accident occurred when Krugman's Honda Fit "made an abrupt lane entry" across the center line into Sinclair's lane of travel and collided with Sinclair's vehicle as Sinclair attempted to avoid Krugman's vehicle. Other than Broyles's unreliable account to the contrary, there is no basis to conclude that Sinclair's vehicle crossed the center line. In addition, there was no apparent reason for Krugman's "abrupt lane entry," and there was no evidence that Krugman applied his brakes prior to impact, thereby suggesting that he was incapacitated.

Given these circumstances, Dr. Matshes provided a reasoned, sound, and logical medical explanation for why Krugman's vehicle suddenly veered into Sinclair's lane with no apparent attempt to avoid Sinclair's vehicle: Krugman was incapacitated by a "left ventricle myocardial infarction." (ECF No. 6-7 at PageID.357.) Dr. Matshes opined that "the acute and evolving myocardial infarction[] would explain the apparent sudden incapacitation of Mr. Krugman which

likely caused him to drift his car into the oncoming lane, striking a car with no apparent attempt to brake or avoid the vehicle." (*Id.*) Although Dr. Cassin concluded that "Kruman's death resulted 'directly and independently from injury, with no other contributing cause,'" and that "'sickness, disease or myocardial infarction' were not 'contributing factors' in Mr. Krugman's death," (ECF No. 6-6 at PageId.283), Dr. Cassin did not explain, let alone address, why any of Krugman's three conditions that, according to Dr. Matshes, rendered Krugman's heart "very ill" prior to the accident, could not have been the reason Krugman abruptly entered Sinclair's lane without braking.

Hutson does not dispute that the exclusion would apply if Krugman's vehicle traveled into Sinclair's lane because Krugman was suffering a myocardial infarction; the myocardial infarction would have been "a contributing factor." She contends, however, that:

> The only "evidence" of myocardial infarction is Dr. Matshes (sic) supposition that it "would explain the sudden incapacitation of Mr. Krugman which likely caused him to drift his car into the oncoming lane," and we know these supposed facts are untrue. There is no factual basis to conclude that Mr. Krugman was incapacitated at all before the crash, particularly given that he was honking his horn at Mr. Sinclair's oncoming car and he swerved at the last moment in an apparent attempt to avoid the crash.

(ECF No. 10 at PageID.423–24.) Because there is a factual basis to support Dr. Matshes's opinion, the Court must conclude that Reliance reached the correct result.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Reliance's motion for judgment on the administrative record, deny Hutson's motion for judgment on the administrative record, and affirm Reliance's decision denying Hutson's claim for benefits.

An Order consistent with this Opinion will be entered.

Dated: November 29, 2017  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE